CITIES: OFFICERS: SALARIES: Compensation of employee for unused vacation upon termination is not considered salary for purposes of Minn. Stat. § 43A.17.

469b
(Cr. Ref. 59-a-41)

September 14, 1993

Robert L. Meller, Jr.
Plymouth City Attorney
Best & Flanagan
3500 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2113

Dear Mr. Meller:

In your letter to Attorney General Hubert Humphrey III, you present substantially the following:

## FACTS

James Willis was employed by the City of Plymouth as City Manager in May, 1971. On May 2, 1989, the City of Plymouth entered an employment contract the terms of which were set forth in a Letter of Understanding. This letter of Understanding was approved by Resolution No. 89-258 dated May 1, 1989. Paragraph 2 of the contract provided as follows:

a.  An annual salary at the rate of $82,700 per year for the year commencing May 1, 1989 through April 30, 1990, and thereafter at a rate as may from time-to-time be fixed by the City.

b.  An annual performance compensation depending upon Mr. Willis' achievement of agreed-upon performance standards.

In addition, Paragraph 2 specifically provided that Mr. Willis' total compensation shall not exceed the amount allowed by Minnesota Statutes, Section 43A.17, subdivision 9.

Paragraph 4 of the contract provided for the business and personal use of an automobile. Paragraph 5 provided that Mr. Willis would be entitled to participate in all benefit plans as the City may from time-to-time maintain for the benefit of its key management employees, including, but not necessarily limited to, PERA, FICA, deferred compensation, vacation, disability leave, holidays and insurance programs. The

City's benefit plans specifically provided for the accrual of vacation leave benefits for regular full-time employees. The amount of vacation accrual depends upon the employee's length of service.

Paragraph 5 also provided Mr. Willis with a $450,000 universal life insurance policy for which the City paid the premiums. Paragraphs 6, 7, 8 also provided for the payment of professional travel, dues and subscriptions as well as one civic club membership at the City's expense. Paragraph 10 of the Contract specifically provided that Mr. Willis will be paid for all accrued vacation and other benefits for which he is eligible upon termination.[1]

Mr. Willis resigned in 1992. At the time of his resignation, Mr. Willis was paid in excess of the maximum salary allowable under Minn. Stat. § 43A.17, subd. 9, which limits salaries of employees of political subdivisions to 95% of the governor's salary. The excess salary resulted from the City's providing Mr. Willis with the use of the automobile and a $450,000 universal life insurance policy. The amount of the excess salary, which was determined to be $25,000.00 has been repaid.[2] In addition, at the time of his resignation, Mr. Willis had 42.6865 vacation days which had accrued and remained unused. The cash value of the unused, accrued vacation is approximately $14,249.40.

You then ask the following question:

## QUESTION

Is the cash equivalent of the unused vacation days which accrued to the City Manager under the City's benefit plans part of the City Manager's salary for purposes of Minn. Stat. § 43A.17? If so, would the payment of the cash equivalent of the unused, accrued vacation to the City Manager after his resignation result in the violation of the salary limitations contained in Section 43A.17?

---

1. For the reasons stated in Op. Atty. Gen. 629a, May 9, 1975 we do not undertake to interpret contracts. However, we will assume for the purposes of this opinion that the provisions of paragraph 10 relating to the payment of accrued vacation upon termination apply to the circumstances of Mr. Willis' resignation.

2. It is assumed that the remaining elements of Mr. Willis' salary, i.e. his salary, performance compensation, deferred compensation, if any, did not exceed the maximum salary under Minn. Stat. § 43A.17, subd. 9.

## OPINION

In our opinion, the cash equivalent of the unused vacation days which accrued under the City's benefit plans is not part of the City Manager's salary for purposes of Minn. Stat. § 43A.17. subd. 9. As a result, payment to the City Manager of the cash equivalent of the unused, accrued vacation days after his resignation would not result in a violation of the salary limitations in that statute.

Minn. Stat. § 43A.17, subd. 9, prohibits the salary of a political subdivision's employee from exceeding 95 percent of the governor's salary except as otherwise provided in the section.[3] By the express terms of this section, deferred compensation and payroll allocations to purchase an individual annuity contract for an employee are included in determining the salary. Subdivision 9 does not expressly address the question of whether the payment of the cash equivalent of unused, accrued vacation upon resignation is included in the determination of an employee's salary for the purposes of Subdivision 9's salary limitations.

The starting point for determining whether the cash equivalent of accrued, unused vacation is included in the salary of a political subdivision's employee is the definition of "salary" as set forth in Minn. Stat. § 43A.17. subd. 1. This subdivision provides, in pertinent part:

> As used in subdivisions 1 to 9, "salary" means hourly, monthly, or annual rate of pay including any lump-sum payments and cost-of-living adjustment increases but excluding payments due to overtime worked, shift or equipment differentials, work out of class as required by collective bargaining agreements or plans established under Minn. Stat. § 43A.18, and back pay on reallocation or other payments related to the hours or conditions under which work is performed rather than the salary range or rate to which a class is assigned.

---

3.  The exceptions in Subdivision 9 which authorize the Commissioner of the Department of Employee Relations to increase the salary limitation for certain positions do not apply here.

Under this definition, it might be argued that the payment of the cash equivalent of unused, accrued vacation could be considered a "lump-sum payment" which is included in the determination of salary. On the other hand, the payment of the cash equivalent of unused, accrued vacation could be considered "other payments related to the hours or conditions under which work is performed rather than the salary range or rate to which a class is assigned", which are not included in the determination of salary. Although somewhat ambiguous, we believe the term "lump-sum payment" as used in this statutory definition refers to payments made to recognize achievement or performance, and not those payments made upon employee termination in liquidation of an employee benefit, such as accrued vacation. Rather, liquidation of unused, accrued vacation would fall into the "other payments" category and would not be included as an addition to salary for purposes of Minn. Stat. § 43A.17, subd. 9. If anything, liquidation of unused, accrued vacation would seem most closely analogous to the employee being paid at the regular salary rate for a period, after termination, equal to the vacation days accrued.

This interpretation is supported by the definition of "total compensation" set forth in Minn. Stat. § 43A.02, subd. 38. Minn. Stat. § 43A.02, subd. 38, defines total compensation as "salaries, cash payments and employee benefits including paid time off, group insurance benefits and other direct and indirect items of compensation with the exception of retirement plans." This definition of total compensation clearly makes a distinction between salary, which is but one component of total compensation, and employee benefits, like vacation, which is another component. The express limitation in Minn. Stat. § 43A.17, subd. 9, is on salary and not on total compensation.

Minn. Stat. § 43A.17, subd. 10, also lends support to this interpretation. This section places restrictions on what may be included in the compensation plans for a city's elected officials and specifically prohibits a city from providing vacation or sick leave benefits to

elected officials as part of the official's compensation plan.[4] This section supports a conclusion then that salary is but one component of a city employee's total compensation. While, under the provisions of Subdivision 10, a city may not provide sick or vacation leave benefits to an elected official as part of a compensation plan, it does not restrict the city's authority to provide sick or vacation leave benefits to other, non-elected officials and employees.

The provisions of Minn. Stat. § 15A.081 and 15A.13 further support a conclusion that the limitations on salary in Minn. Stat. § 43A.17, subd. 9, were not intended to limit total compensation and to prevent a city from providing employee benefits to its employees and it liquidate unused, accrued benefits upon termination. First, Minn. Stat. § 15A.081 places limitations on the salaries of state agency heads. Subdivision 9 of that section, however, expressly authorizes the transfer of vacation accrual between and among executive branch positions. In addition, Minn. Stat. § 15A.13 expressly provides that the annual salaries prescribed by Minn. Stat. ch. 15A are in addition to other terms and conditions of employment established by the Commissioner of Employee Relations pursuant to Minn. Stat. § 43A.18. This latter section establishes the Commissioner's authority to determine the total compensation, including salary and benefits, of State employees. Although the Commissioner is prohibited under the express provisions of Minn. Stat. § 43A.17, subd.8, from establishing or approving any compensation which allows an employee to convert unused accrued vacation in cash before termination from State employment, the Commissioner has the authority to approve compensation plans which allow an employee to convert unused, accrued vacation into cash after termination. In fact, the compensation plans for state agency heads which are approved by the Commissioner of Employee Relations pursuant to Minn. Stat. § 43A.18

---

4.  On the other hand, this Subdivision 10 also requires a city to continue the elected official's salary for any absences due to sickness or vacation.

expressly allow such employees to convert their unused, accrued vacation into cash upon termination from State employment.

When considered in the context of the provisions of ch. 43A and ch. 15A discussed above, it is our conclusion that the limitations on the salary of a city's employee contained in Minn. Stat. § 43A.17, subd. 9, do not apply to the cash equivalent of the City Manager's unused, accrued vacation and that payment of the cash equivalent upon the employee's resignation would not violate the limitations on salary contained in Minn. Stat. § 43A.17, subd. 9.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General


SHARON LEWIS
Assistant Attorney General

(612) 297-5945

SL:gs